UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| BHS CORRUGATED - NORTH AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:13-CV-67 |
| | ) | (VARLAN/GUYTON) |
| INTERNATIONAL ASSOCIATION OF | ) | |
| BRIDGE, STRUCTURAL, ORNAMENTAL AND | ) | |
| REINFORCING IRON WORKERS (AFL-CIO), | ) | |
| SHOPMEN'S LOCAL UNION NO. 812 | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Defendant International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers (AFL-CIO), Shopmen's Local Union No. 812 (hereinafter "Local 812" or the "Union"), has moved to dismiss [Doc. 10] this case on the grounds that plaintiff BHS Corrugated - North America, Inc. (hereinafter "BHS Corrugated" or the "Company") failed to exhaust its contractual remedies.  Alternatively, Local 812 argues that the Court should dismiss the case for lack of subject matter jurisdiction because it raises representational issues within the exclusive jurisdiction of the National Labor Relations Board ("NLRB").  Local 812 submitted a memorandum in support of the pending motion [Doc. 11], to which BHS Corrugated has responded [Doc. 15].  Local 812 has filed a reply [Doc. 16] and the matter is now ripe for determination.

Having carefully considered the pending motion and related pleadings, the defendant's Motion to Dismiss [Doc. 10] will be **GRANTED**.

## I. Relevant Facts[1]

BHS Corrugated manufactures and services large rolls that are used in producing corrugated board at a facility in Rutledge, Tennessee [Doc. 3 at ¶ 2]. BHS Corrugated and Local 812 are parties to a collective bargaining agreement ("CBA") effective June 23, 2011 through June 23, 2014, which covers certain employees at the Rutledge plant [*Id.* at ¶¶ 5–6]. Specifically, the CBA applies to "all production and maintenance employees . . . engaged in the fabrication of iron, steel, metal, and other products, or in maintenance work in or about the Company's plant or plants located at Rutledge, Tennessee and vicinity and to work done by such production and maintenance employees" [*Id.* at ¶ 6; Doc. 3-1 at p. 5]. The CBA contains a grievance and arbitration procedure which covers "an alleged violation of any Section of [sic] Subsection of this Agreement" [Doc. 6-1 at pp. 43– 48].

Last fall, BHS Corrugated notified Local 812 of its intent to cease operations at the Rutledge location and to open a new facility in the Hardin Valley area of Knoxville, Tennessee [Doc. 3 at ¶¶ 7–8]. BHS has advised Local 812 of its position that the CBA does not apply to the Knoxville location, as it applies only to Rutledge and its "vicinity" [*Id.* at ¶ 9]. Local 812 has taken the position that the CBA applies to the new plant and its

---

[1] For the purposes of a motion to dismiss, the Court takes plaintiff's factual allegations as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint" (citations omitted)).

2

represented employees are entitled to transfer to the Knoxville plant [*Id.* at ¶ 11]. Local 812 also claims that BHS Corrugated has violated the CBA by posting open positions for the Knoxville location and has filed a grievance over the matter [*Id.* at ¶¶ 12–13; Doc. 3-3]. BHS Corrugated claims that by "attempting to insist that the Company process a grievance related to actions that are outside of the Rutledge plant and not covered by the Agreement, the Defendant is breaching the Agreement" [Doc. 4 at ¶ 15]. BHS Corrugated seeks a declaratory judgment pursuant to § 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, that the CBA does not apply to the plaintiff's Knoxville location [*Id.*, Prayer ¶ 2].

## II. Analysis

### A. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679.

Claims pursuant to § 301(a) of the LMRA must first be pursued through contractual grievance remedies before seeking relief in federal court. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652-53 (1965); *Drake Bakeries, Inc. v. Local 50, Am. Bakery & Confectionary Workers Int'l*, 370 U.S. 254, 266 (1962). The failure to exhaust contractual remedies is a bar to litigation that results in dismissal pursuant to Rule 12(b)(6). *Chapman v. UAW Local 1005*, 670 F.3d 677, 681 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 438 (2012); *United Ass'n of Journeyman & Apprentices of the Plumbing & Pipefitting Indus., Local No. 577 v. Ross Bros. Constr. Co.*, 191 F.3d 714, 716-17 (6th Cir. 1999).

### B. Whether the Dispute is Subject to Mandatory Arbitration

#### 1. The Wantz Affidavit

Before addressing the primary issue, *i.e.*, whether this dispute is subject to the grievance and arbitration provisions of the parties' CBA, the Court must first address whether to consider the affidavit of Mr. William Wantz [Doc. 15-2], the Company's Vice President of Manufacturing, submitted with BHS Corrugated's response to the pending motion.

BHS Corrugated argues that the parties can only be ordered to arbitrate a dispute that they have specifically agreed to arbitrate and that the CBA is ambiguous as to whether it applies to grievances by either party or only to grievances by the Union or employee. Therefore, because the contract language is ambiguous, BHS Corrugated argues that the Court must examine the parties' past practice as supported by Mr. Wantz's affidavit [Doc. 15 at pp. 4–7]. Mr. Wantz's affidavit states that there are no records indicating that the Company has ever filed a grievance or brought a claim under the current or preceding CBAs. Mr. Wantz has never understood the CBA to give the Company any right to initiate a grievance on its own behalf [Doc. 15-2 at ¶ 5]. Because Mr. Wantz's affidavit is a document outside the pleadings for purposes of Rule 12(b)(6), BHS Corrugated has requested that the Court consider the affidavit and treat the defendant's motion as a motion for summary judgment pursuant to Fed. R. Civ. P. 56.

In reply, Local 812 urges the Court to decline the Company's invitation to consider Mr. Wantz's affidavit and convert the pending motion to a motion for summary judgment because the language of the CBA settles the arbitrability issue. Additionally, Local 812 contends that it cannot respond to the factual issues raised by Mr. Wantz's affidavit without the benefit of discovery [Doc. 16 at pp. 2–5].

Fed. R. Civ. P. 12(d) provides that if "matters outside the pleadings are presented to and not excluded by the court" a motion under Rule 12(b)(6) "must be treated as one for summary judgment under Rule 56." Further, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). While the Rules expressly provide for the conversion of a motion to dismiss to a motion for summary judgment, the Sixth Circuit has cautioned that such action "should be exercised with great caution and attention to the parties' procedural rights." *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009). The Sixth Circuit has also held that such conversion can occur without affirmative action by the district court, *i.e.*, merely by the failure to exclude the presented outside evidence. *See Northville Downs v. Granholm*, 622 F.3d 579, 585 (6th Cir. 2010); *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006).

After carefully considering the issues, the Court declines the invitation to convert the pending motion to a motion for summary judgment and expressly excludes Mr. Wantz's affidavit from consideration as to the merits of the motion to dismiss for two reasons. First, and as discussed more fully *infra*, the Court finds that the instant dispute is covered by the

unambiguous language of the parties' CBA and therefore resort to extraneous evidence of the parties' intent is not necessary. Second, and equally important, conversion of the pending motion to a motion for summary judgment would thus allow Mr. Wantz's version of the facts to be the only, and therefore undisputed, facts in the record regarding the parties' history of processing grievances. As suggested by defendant, Local 812 would surely want the opportunity to depose Mr. Wantz and perhaps other Company officials and to request and examine records in an effort to determine the accuracy of Mr. Wantz's testimony.

### 2. The Scope of the Grievance and Arbitration Procedures

Local 812 argues that this is a dispute over the interpretation or application of language in the CBA and therefore BHS Corrugated is required to take it through the grievance and arbitration procedure. Thus, Local 812 argues that the plaintiff's failure to exhaust contractual remedies is a bar to litigation and the case should be dismissed [Doc. 11 at pp. 4–7].

Section 19 of the CBA contains the parties' grievance procedure and defines a "grievance or dispute" as "an alleged violation of any Section of [sic] Subsection of this Agreement" [Doc. 6-1 at p. 43]. The pertinent provision of Section 19(C) then states:

> Should a grievance or dispute arise between the Company and the Union in connection with the application, interpretation, or alleged violation of any provision of this Agreement, the complaining or aggrieved party shall serve notice thereof, in writing, on the other no later than five (5) workdays from the date the grievance or dispute occurred or, exercising reasonable care, comes to the attention of the complaining or aggrieved party. Such grievances between the Company and the Union shall be submitted in Step 2 and processed as provided thereafter.

7

[*Id*.] Step 2 of the grievance procedure provides in part:

> Within nine (9) days after such grievance is presented to be processed in this Step 2, a representative of the Union, the Shop Committee, with or without the complaining employee(s) and the Plant Manager or his designated representative shall meet for the purpose of discussing the facts surrounding the grievance. If the grievance is not settled during such meeting, the Plant Manager or his designated representative shall render his decision in writing within nine (9) days . . . If the written decision of the Plant Manager or his designated representative is not satisfactory, the grievance shall be submitted to arbitration in accordance with the arbitration provisions hereinafter . . . .

[*Id*. at p. 44]. Finally, Section 20 of the CBA contains the arbitration procedure and states in part:

> (A) Any grievance or dispute between the Company and the Union . . . shall, upon written request of either party to this Agreement, be submitted to arbitration by an impartial arbitrator to be selected by mutual agreement of the parties.

[*Id.* at p. 46].

As noted above, Section 1 of the parties' CBA provides that the agreement is "applicable to all production and maintenance employees . . . engaged in the fabrication of iron, steel, metal, and other products, or in maintenance work in or about the Company's plant or plants located at Rutledge, Tennessee and vicinity . . ." [Doc. 6-1 at p. 7]. As also noted above, the parties dispute whether the Company's proposed facility in Knoxville is encompassed by the term "vicinity" in the CBA. Local 812 takes the position that this disagreement clearly qualifies as a "dispute . . . between the Company and the Union in connection with the application, interpretation, or alleged violation of any provision of this Agreement" [Doc. 11 at p. 6]. Local 812 also notes Section 21(B)(2) of the CBA which

8

states, "[t]he Company and the Union [a]gree that the grievance procedures provided herein are adequate to provide a fair and final determination of *all grievances* arising under the terms of this contract" [Doc. 6-1 at p. 49 (emphasis added)].

BHS Corrugated argues that, while Section 19(C) might be interpreted to permit the Company *or* the Union to pursue a claim via the grievance procedure, Step 2 contemplates that the dispute will be brought to the Plant Manager or designated representative who will issue a written decision if the matter is not resolved. As plaintiff's response brief states, "[i]t makes no sense to suggest that a Company representative would issue a written decision based on the Company's own grievance" [Doc. 15 at p. 6]. Going a step further, BHS Corrugated argues that, because Section 19(D) provides that a grievance will be considered justified if the Company fails to issue a written decision, the literal language of the CBA would allow the Company to always prevail by submitting a grievance, meeting with the Union representatives, *not* reaching an agreement, and then *not* issuing a written decision [*Id.*]. Thus, BHS Corrugated contends that the CBA is ambiguous with respect to whether the parties agreed to arbitrate violations of the CBA alleged by the Company and therefore it cannot be compelled to arbitrate such claims.

In reply, Local 812 notes the CBA's broad definition of grievance, that a "complaining or aggrieved party" may initiate the grievance process, and that "either party" may request binding arbitration. Regarding the Company's argument as to the language of Step 2, Local 812 suggests that the most reasonable interpretation is that it applies *when* the

9

union or employee bring a grievance, not that *only* the union or employee is allowed to bring a grievance [Doc. 16 at pp. 2–3].

Thus, as outlined above, the parties do not dispute that they have a disagreement as to an issue of contract interpretation, *i.e.*, the meaning of "Rutledge, Tennessee and vicinity," but they do dispute whether that disagreement is subject to the CBA's grievance and arbitration procedures. The Court's function in such matters is "confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960); *Paper, Allied Indus., Chem. & Energy Workers Int'l Union v. Air Prods. & Chems., Inc.*, 300 F.3d 667, 677 (6th Cir. 2002). "[T]he judicial inquiry . . . must be strictly confined to whether the reluctant party did agree to arbitrate the grievance . . . . An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960). Further, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* at 585.

Having carefully considered the parties' positions and the CBA, the Court finds that the parties' dispute is subject to the grievance and arbitration procedure to which they have agreed. The Court notes that the CBA broadly defines "grievance or dispute" as "an alleged violation of *any* Section" or subsection of the agreement [Doc. 6-1 at p. 43 (emphasis added)]. Furthermore, the grievance procedure plainly contemplates the possibility that a

10

grievance may be initiated by either the Company or the Union: "Should a grievance or dispute arise between the Company and Union in connection with the . . . interpretation . . . of any provision of this Agreement," "the complaining or aggrieved party shall serve notice," and "grievances between the Company and the Union shall be submitted in Step 2" [*Id.*]. There is no language limiting the initiation of a grievance to only the Union or an employee. While BHS Corrugated correctly notes that Step 2 of the grievance procedure only addresses the Company's response to a grievance by the Union or an employee, this omission does not rise to the level of "forceful evidence" of an intent to exclude grievances by the Company. The Court cannot ignore the plain language of the rest of Section 19: *any* dispute regarding any provision of the CBA may be the subject of a grievance by either party. Further, the parties agreed that "[a]ny grievance or dispute between the Company and the Union . . . shall . . . be submitted to arbitration" [*Id.* at p. 46]. Again, the arbitration provision does not limit the types of grievances that may be submitted to arbitration nor does it limit which party may submit a dispute to arbitration. Accordingly, the parties' dispute as to the meaning of "Rutledge, Tennessee and vicinity" is a dispute as to the interpretation and application of the Agreement to the Company's proposed facility in Knoxville and is subject to the grievance and arbitration procedures outlined in the parties' CBA. BHS Corrugated's failure to first exhaust its contractual remedies over this dispute is a bar to litigation. *Chapman*, 670 F.3d at 681. The defendant's motion to dismiss [Doc. 10] will be granted.

11

In light of the Court's ruling on the first issue, the Court need not resolve the alternative issue, whether the case raises representational issues within the exclusive jurisdiction of the NLRB.

## III. Conclusion

For the reasons set forth herein, the Court finds that the parties' dispute is subject to the mandatory grievance and arbitration provisions of their CBA. The plaintiff's failure to exhaust their contractual remedies is fatal to their claim. The defendant's motion to dismiss [Doc. 10] pursuant to Fed. R. Civ. P. 12(b)(6) will be **GRANTED** and this case will be **DISMISSED**. An appropriate order will be entered.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE